1  S. Peter Serrano
2  United States Attorney
3  Eastern District of Washington
   Courtney R. Pratten
4  Jeremy J. Kelley
   Assistant United States Attorneys
5  402 E. Yakima Avenue, Suite 210
6  Yakima, Washington 98901
   Telephone: (509) 454 -4425
7

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 15, 2025

SEAN F. McAVOY, CLERK

ECF No. 22

8              UNITED STATES DISTRICT COURT
9         FOR THE EASTERN DISTRICT OF WASHINGTON

10  UNITED STATES OF AMERICA,

11                    Plaintiff,

12                                      INDICTMENT  4:25-cr-06033-MKD-4

13          v.
                                        Vios: 18 U.S.C. § 371
14                                           Conspiracy to Defraud the
                                             United States
15                                           (Count 1)
16
17                              and          18 U.S.C. § 1349
18  HARVEST PLUS LLC,                        Conspiracy to Commit Fraud
                                             in Foreign Labor Contracting
19                                           (Count 2)
                    Defendants.
20                                           18 U.S.C. §§ 1001(a)(2), 2
21                                           False Statements
                                             (Counts 3-14)
22
23                                           18 U.S.C. §§ 1546(a), 2
24                                           False Swearing in Immigration
                                             Matters
25                                           (Counts 15-36)
26
27                                           18 U.S.C. §§ 1351(a), 2
                                             Fraud in Foreign Labor
28                                           Contracting
                                             (Counts 37-39)

INDICTMENT – 1

18 U.S.C. §§ 1028A, 2
Aggravated Identity Theft
(Counts 40-43)

18 U.S.C. § 981(a)(1)(C), 18
U.S.C. § 982, 18 U.S.C.
§ 1028(b), 28 U.S.C. § 2461(c)
Forfeiture Allegations

The Grand Jury charges:

## INTRODUCTION

1.     Between 2022 and 2024, Defendants, the owners and operators of a foreign labor contracting business that supplied foreign agricultural workers to agricultural businesses in the United States, engaged in a scheme and conspiracy to enrich themselves by defrauding a program intended to support domestic agricultural businesses.  To enrich themselves, Defendants created and submitted false, fraudulent, and forged documents, extracted improper payments from workers, violated numerous material program requirements, and lied to workers, customers, and regulators and directed, coerced, and intimidated workers to do so.

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

The H-2A Temporary Work Visa Program

2.     Foreign nationals are not eligible to work for pay in the United States, and companies and individuals are not permitted to employ foreign nationals to work for pay in the United States, without authorization and approval from the United States government.

3.      One means by which foreign nationals can obtain authorization to work for pay in the United States is by obtaining an H-2A nonimmigrant visa through an agricultural employer based in the United States.  An H-2A visa is commonly referred to as a "temporary work visa" for agricultural workers.  A

INDICTMENT – 2

nonimmigrant visa allows a foreign national to enter the United States temporarily, for a specific purpose. The visa is issued for the validity dates outlined on the petition; however, an employer can file for extension not to exceed three years.

4.    Workers cannot apply for H-2A visas without being sponsored by an employer. The application is completed by the employer, who is referred to as the "petitioner," and the foreign worker is referred to as the "beneficiary." To apply for the H-2A visa, the prospective agricultural employer based in the United States must submit information to the Department of Labor (DOL), the Department of Homeland Security (DHS), Citizenship and Immigration Services (USCIS), and, in most cases, the Department of State (DOS).

5.    First, a prospective agricultural employer must obtain a temporary labor certification from the DOL by submitting an Application for Temporary Employment Certification, Form 9142A, H-2A Application for Temporary Employment Certification (Form 9142A) with the DOL requesting a DOL labor certification. The application to DOL must provide facts indicating that certain conditions established by DOL for obtaining visas for nonimmigrant foreign workers are met, such as that the petitioning company has a need for the employees and that the petitioner cannot fill such need with workers in the United States.

6.    Once DOL issues the temporary labor certification, the petitioner must submit a Petition for a Nonimmigrant Worker, Form I-129, to USCIS, seeking immigration authorization of a specific number of workers. After USCIS approves the immigration authorization for a specific number of employees to work for a specific agricultural employer for a specific authorized period of time, proposed workers outside the United States apply for an H-2A visa with the DOS at a U.S. Embassy or Consulate abroad.

INDICTMENT – 3

7.    To apply for an H-2A visa, a Nonimmigrant Visa Application, Form DS-160 is submitted electronically through the United States Department of State's website.  Consular officers use the information entered on the Form DS-160 to process the visa application and, following a personal interview, determine an applicant's eligibility for an H-2A visa.  If DOS approves the visa application, a temporary H-2A employment visa is issued to the foreign worker for a period of up to three years, contingent on the foreign worker and the petitioner satisfying all the requirements of the H-2A visa.

The DOL Labor Certification Process

8.    Either a farm owner or farm labor contractor may complete the labor certification application with DOL.  The DOL labor certification application includes the Form 9142A, Application for Temporary Employment Certification, as well as the DOL Form 790A, Agricultural Clearance Order Form, as well as other required submissions.

9.    DOL allows an H-2A Labor Contractor (H-2ALC) or Farm Labor Contractor (FLC) to file as an employer for purposes of Form 9142A.  An H-2ALC is any person who: (a) is an employer; (b) is not a fixed-site employer, agricultural association, or employee of such; and (c) recruits, solicits, hires, employs, furnishes, houses, or transports any migrant or seasonal agricultural worker.  An H-2A labor certification application submitted by an H-2ALC must be for a specific area of employment for a specific fixed-site farm or agricultural business.  An H-2ALC can petition for H-2A visas for foreign workers whom the H-2ALC would then supply to farm owners or other agricultural businesses to perform agricultural work.  Under the typical arrangement, the H-2ALC would employ and pay the H-2A workers and invoice the agricultural business for work performed for which the agricultural business would pay the H-2ALC.

10.    In order to file a Form-9142A, the H-2ALC is first required to be

INDICTMENT – 4

registered with DOL as an FLC pursuant to the Migrant and Seasonal Agricultural Worker Protection Act. An FLC is any person (other than an agricultural employer, an agricultural association, or an employee of such) who, for any valuable consideration paid or promised to be paid, performs any farm labor contracting activity. The H-2ALC is also required to obtain an FLC certificate of registration, which identifies the specific farm labor contracting activities the H-2ALC is authorized to perform, prior to engaging in any farm labor contracting activity.

11.     In its FLC registration application, the H-2ALC/FLC must submit: (a) the name and location of each fixed-site agricultural business to which the H-2ALC/FLC expects to provide H-2A workers; (b) the expected beginning and ending dates when the H-2ALC/FLC will be providing the workers to each fixed site; (c) a description of the crops and activities the workers will perform at each fixed site; (d) a copy of each work contract agreement between the H-2ALC/FLC and the agricultural business to which the H-2ALC/FLC expects to furnish workers; and (e) an original surety bond written to cover the liability incurred during the term of the work contract period and for the number of workers listed on the application, made payable to DOL.

12.     An H-2ALC/FLC seeking labor certification must attest in the Form 9142A, as a material part of the application, that:

a.     The employer and any agent have not sought or received payment of any kind from the employee for any activity related to obtaining the labor certification, including payment of the employer's attorney fees, Application for Temporary Employment Certification fees, or recruitment costs. The attestation makes clear that prohibited payments for purposes of the form include wage concessions, kickbacks, bribes, tributes, fees, in-kind payments, and free labor.

INDICTMENT – 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b. The H-2ALC/FLC will comply with applicable Federal, state, and local employment-related laws and regulations; and

c. The H-2ALC/FLC will pay all covered workers at least the highest of the following applicable wage rates in effect at the time work is performed: the adverse effect wage rate, the applicable prevailing wage, the agreed-upon collective bargaining rate, or the Federal or State statutory minimum wage.

13.    The H-2ALC/FLC must also file a Form 790A with the State Workforce Agency (in Washington, the Employment Security Department (ESD)) in the area of intended employment.  The Form 790A lists the work hours and locations where the intended H-2A workers will be employed.  This Form 790A causes ESD to begin attempts to recruit United States citizens or lawful permanent residents for the vacant agricultural jobs.  The H-2ALC/FLC must also typically attempt their own recruitment efforts by posting newspaper advertisements in a local newspaper or other source.  These steps must be performed to ensure that the H-2A workers are filling positions that cannot be filled by domestic labor.

14.    Once the Form 790A has been submitted and the recruitment efforts for domestic labor exhausted, the H-2ALC/FLC can submit its Form 9142A electronically.  Electronic submittals are received at DOL's National Processing Center located in Chicago, Illinois.  In its Form 9142A, the H-2ALC/FLC must list the steps taken to recruit domestic workers, the wages it will pay to the H-2A workers, and specific work locations, including worksite addresses.  DOL may not approve the Form 9142A until the H-2ALC/FLC has demonstrated that there are not sufficient and qualified domestic workers and that domestic worker wages will not be adversely affected by the prospective H-2A workers.  The Form 9142A Appendix A must be signed and attached to ETA-9142A for certification, under penalty of perjury, by the H-2ALC/FLC, before it can be approved.

INDICTMENT – 6

The USCIS H-2A Authorization Process

15.      Once DOL has approved the application based on the Form 9142A submitted by the H-2ALC/FLC, the H-2ALC/FLC applies to USCIS for approval by submitting a USCIS Form I-129, Petition for a Nonimmigrant Worker to USCIS, requesting authorization from USCIS for a foreign worker to enter the United States temporarily as a nonimmigrant to perform agricultural work.

16.      The Form I-129 submitted by the H-2ALC/FLC must include a complete list of all work to be performed by H-2A workers, the job title and description, the dates that all work will be performed, the physical locations where all work would be performed, the names and addresses of all businesses at which work would be performed, and the wages or salary. The petitioner does not have to specify in a Form I-129 the specific workers' names, unless the workers are already in the United States. The number of workers that can be requested is based on the justification set forth in the petition. The Form I-129 must guarantee the wages and other terms and conditions of employment by contractual agreement with the H-2A workers.

17.      The H-2ALC/FLC is required to sign and certify the Form I-129 and the information contained therein under penalty of perjury and then submit the Form I-129 by mail to one of four USCIS service centers in the United States.

18.      An H-2ALC/FLC must further attest, as part of the H Classification Supplemental to Form I-129, a required immigration document for an H-2A work visa petition, that:

   a.      None of the H-2A workers located for hiring paid the H-2ALC/FLC, or any agent, any form of compensation as a condition of employment or made an agreement to pay the H-2ALC/FLC or any agent at a later date; and

   b.      The employer agrees to the conditions of H-2A employment,

INDICTMENT – 7

which include payment of any worker travel expense from the worker's home abroad to the place of employment in the United States if the worker completes at least 50 percent of the work contract period.

The DOS H-2A Visa Admission Process

19.     If USCIS approves the H-2ALC/FLC's Form I-129 Petition, the H-2ALC/FLC is notified that its intended H-2A workers can present themselves in person at the nearest United States embassy or consulate for a visa interview conducted by DOS.  The H-2A worker is then required to electronically submit a nonimmigrant visa application known as Form DS-160.  Before completing the application process, the H-2A worker must submit fingerprints and certify under penalty of perjury that all the statements in the visa application, and anything they say during the visa interview process, is true and correct to the best of the worker's knowledge.  Consular officers rely upon and use the information entered on the Form DS-160 to process the H-2A visa application and, following the personal interview, determine the applicant's eligibility for the H-2A visa.

20.     If granted, the H-2A nonimmigrant visa authorizes a foreign national to work for pay in the United States through an agricultural employer based in the United States.  The H-2A visa is issued for the validity dates outlined in the petition, and an H-2ALC/FLC may file for extension not to exceed three years.  Once approved, the H-2A visa is affixed to the foreign worker's passport, which the foreign worker can present at any United States port of entry to apply for admission into the United States as an H-2A temporary agricultural worker.

H-2A Program Requirements and Safeguards

21.     In addition to the conditions and requirements identified above, the H-2A program includes various protections intended to protect domestic workers from negative effects on wages or working conditions and to protect foreign workers from exploitation, including, specifically:

INDICTMENT – 8

a.    As a material condition of the program, federal regulations strictly prohibit H-2ALC/FLCs from collecting or receiving payments from foreign workers for any activity related to obtaining a labor certification, including any Form 9142A filing fees, Form I-129 filing fees, fraud fees, recruitment fees, or any other fees, to allow the foreign worker to apply for an H-2A visa or to be included in any H-2A application made by an employer.

b.    As a material condition of the program, H-2ALC/FLCs are required to furnish to all H-2A workers, and are prohibited from charging workers for, any tools, supplies, or other equipment required for the job, including any safety equipment, as well as transportation to and from the job site, and for providing safe and adequate housing in approved and registered housing facilities at no cost to the workers.  This housing is required to include kitchen facilities, or the H-2ALC/FLC is required to provide at least three daily meals, as well as hot and cold water, bathing facilities, and other basic amenities.

c.    As a material condition of the program, H-2ALC/FLCs are further required to provide transportation for all H-2A workers to and from their home countries, at no cost to the workers, as well as safe and clean drinking water, access to health care, sick leave, and overtime pay for any overtime hours.

d.    In addition to these other requirements, H-2ALC/FLCs are prohibited from making misrepresentations to H-2A workers regarding the terms, working conditions, benefits, and wages related to their employment in the United States.  For example, the H-2ALC/FLC is prohibited from failing to disclose deductions from pay, additional charges, or changes in working conditions that they intended to impose once work had commenced.

e.    Finally, the H-2ALC/FLC is required to comply with applicable federal, state, and local employment-related laws and regulations, including employment-related health and safety laws and payroll deductions.  In

INDICTMENT – 9

Washington, this includes state payroll taxes; however, H-2ALC/FLCs are exempt from the requirement to collect and remit federal payroll taxes, including employer contributions, pursuant to the Federal Insurance Contributions Act (FICA), as H-2A workers do not participate in, and are not eligible for, the Social Security or Medicare programs.

f.     H-2A status only allows an H-2A visa holder to enter the United States to work for the specific employer, during the specific dates, and at the specific job sites doing the specific work set forth in the labor certification, the I-129, and the visa petition.  Therefore, if the H-2A worker leaves the employer, stays beyond the eligible dates, or is assigned to perform different work at a different job site, the H-2A worker's immigration status is no longer valid, the H-2A worker is required to depart the United States, and the H-2ALC/FLC is not permitted to employ or profit from the worker.  Federal regulations further provide that a petition can be denied or revoked if a beneficiary (i.e., a foreign worker) paid or agreed to pay the H-2ALC/FLC, an agent, facilitator, recruiter, or similar employment service fees or compensation.  Denial or revocation is required if payment of the fees or compensation was a condition of an offer of employment under the H-2A program.

The Defendants and Their Roles

22.     Defendant HARVEST PLUS LLC ("HARVEST PLUS") was a limited liability corporation with its principal place of business in Kennewick, Washington, in the Eastern District of Washington.  Defendant HARVEST PLUS was a H-2ALC and FLC that supplied H-2A agricultural workers to agricultural businesses in Eastern Washington and Oregon.  Defendant HARVEST PLUS was registered as a business in Eastern Washington and Oregon.  It was approved to employ or provide H-2A workers as an H-2ALC/FLC in Washington in 2022 and 2023 and approved to employ or provide H-2A workers in Oregon in 2023 and

INDICTMENT – 10

2024.  Defendant HARVEST PLUS submitted applications for labor certifications and petitions for H-2A workers, and supplied H-2A workers to agricultural businesses, for crop years 2022, 2023, and 2024.

23.    Defendant ███████████████████ was the owner, manager, and sole governor of Defendant HARVEST PLUS.  Defendant ███████████████ recruited prospective H-2A workers in Mexico and brought them to the United States to work for Defendant HARVEST PLUS at agricultural businesses in Eastern Washington and Oregon.

24.    Defendant ██████████████████ acted as a business agent, account manager, and, during 2022 and 2023, H-2A Program Manager for Defendant HARVEST PLUS.  In her capacity as an agent for Defendant HARVEST PLUS, Defendant ███████████ communicated with prospective agricultural business customers, H-2A workers, and federal and state regulatory personnel concerning Defendant HARVEST PLUS's participation in the H-2A program.

25.    Defendant ██████████████ acted as Defendant HARVEST PLUS's human resource director in 2022 and 2023 and, during 2024, H-2A Program Manager.  Defendant ██████████ communicated with prospective and actual customers, H-2A workers and other employees, and federal and state regulatory personnel concerning Defendant HARVEST PLUS's participation in the H-2A program.

### The Conspiracy and its Objects

26.    The allegations in paragraphs 1 through 25 of this Indictment are incorporated as though realleged herein.

27.    Beginning no later than on or about March 4, 2022, and continuing through at least October 31, 2024, in the Eastern District of Washington and

INDICTMENT – 11

elsewhere, Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and HARVEST PLUS LLC did knowingly and intentionally combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is: (1) to knowingly subscribe as true under penalty of perjury under 28 U.S.C. § 1746 a false statement with respect to a material fact in an application and document required by immigration laws and regulations prescribed thereunder, to wit, a DOL ETA Form 9142A and a DHS Form I-129, which Defendants then knew contained false statements of material facts, in violation of Title 18, U.S.C., Section 1546(a); and (2) to make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, a false writing or document, knowing the same to contain a materially false, fictitious, and fraudulent statement, in violation of Title 18, U.S.C., Section 1001(a)(2); all in violation of 18 U.S.C. § 371.

<u>The Manner and Means of the Conspiracy</u>

It was part of this conspiracy that:

28.    Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and their known and unknown co-conspirators, would file a Form 9142A, Application for Temporary Employment Certification with the DOL on behalf of Defendant HARVEST PLUS. As part of the application information, Defendants would agree to comply with the material conditions of the H-2A program, including: that H-2A workers would be provided with transportation and housing at no cost to the workers; that H-2A workers would be housed in approved specific locations that complied with all local, state, and federal standards; that H-2A workers would be provided meals or access to kitchen facilities; that there was a specific temporary need for the specific number of workers

INDICTMENT – 12

at the specific worksite and agricultural business specified in the application for the specific period of time; that H-2A workers would be paid the appropriate prevailing wage; that the application and accompanying ETA-790A identified the name(s) and location(s) of each fixed-site agricultural business at which Defendant HARVEST PLUS would be providing H-2A workers, the expected beginning and end dates, and a description of the crops and activities the workers would perform; that Defendant HARVEST PLUS understood and agreed to comply with each of the conditions of employment, assurances, and obligations of the program; that Defendant HARVEST PLUS would comply with all applicable Federal, State, and local employment-related laws and regulations, including employment-related health and safety laws; that Defendant HARVEST PLUS would provide appropriate worker's compensation coverage for injury or illness sustained while on the job; that Defendant HARVEST PLUS would provide to the H-2A workers, at no additional charge, all tools, supplies, and equipment required to perform the duties assigned; that neither Defendant HARVEST PLUS nor its agents sought or received payment of any kind from any H-2A worker for any activity related to his or her status as an H-2A worker, including, but not limited to, any application fees or recruitment costs; that Defendant HARVEST PLUS had not and would not directly or indirectly intimidate, threaten, restrain, coerce, discharge, blacklist, or in any manner discriminate against any person who participated in any complaint, testimony, or exercise of rights related to immigration law; and, that Defendant HARVEST PLUS would inform H-2A workers of the requirement that they leave the United States at the end of the approved time period or when work for the specific approved agricultural business ends (whichever is earlier). Defendants

signed these petitions and documents on behalf of Defendant HARVEST PLUS under penalty of perjury and other criminal penalties, attesting

INDICTMENT – 13

1    that all the information in each application was true and accurate, and taking full

2    responsibility for the contents therein.

3        29.    Defendants ████████████████████████████████████

4    ██████████████████████████████████ then filed and made representations

5    on a Form I-129 Petition for Non-Immigrant Worker for H-2A visas with USCIS.

6    As part of the Form I-129 Petition, Defendants ████████████████████████

7    ████████████████████████████████████████████ signed on

8    behalf of Defendant HARVEST PLUS under penalty of perjury and attested that all

9    information therein was complete, true, and correct, made representations

10    concerning all work to be performed by the H-2A workers, including the locations

11    for performance, the time periods, the specific work to be performed, and the

12    workers' wages.  The Form I-129 Petition also required Defendants ██████████

13    ████████████████████████████████████████████████████████

14    ████████ to certify that none of the H-2A workers had paid or would pay

15    Defendant HARVEST PLUS or any agent any money or compensation as a

16    condition of employment, and that Defendant HARVEST PLUS agreed to all

17    conditions of H-2A employment, including payment of any worker travel expense

18    from the worker's home abroad to the place of employment in the United States.

19        30.    These representations in Paragraphs 28 and 29 were materially false

20    and fraudulent.    Defendants, together with their known and unknown co-

21    conspirators, improperly charged H-2A workers to be H-2A workers by making the

22    H-2A workers pay for their own H-2A visa fees and forcing the H-2A workers to

23    pay for their own transportation expenses.    Defendants, and their known and

24    unknown co-conspirators, also forced H-2A workers to pay housing and food fees

25    of approximately $100/week each, which Defendants and their known and unknown

26    co-conspirators collected in cash from each H-2A worker each week.  Defendants,

27    and their known and unknown co-conspirators, did not house workers at approved

28

locations, and housed them in conditions that did not meet applicable housing standards, including in states in which they were not even approved to be H-2A workers. Rather than employ H-2A workers at the approved work locations, Defendants, and their known and unknown co-conspirators, assigned H-2A workers to companies that did not have approved H-2A contracts, including for work that was not even agricultural work, and Defendants used false and fraudulent documents and information to misrepresent the need for H-2A workers at agricultural businesses in order to obtain approval for H-2A visas for workers that Defendants then simply assigned to different businesses. Defendants, and their known and unknown co-conspirators, also did not provide or pay for transportation for H-2A workers back to Mexico at the conclusion of the H-2A period, nor did Defendants advise the H-2A workers of their obligations to return, but instead Defendants directed the H-2A workers to remain in the United States and to continue working for Defendant HARVEST PLUS' customers that Defendants selected, directing the H-2A workers to obtain false identification documents and to use assumed names and false social security numbers in order to continue working in the United States. Defendants, and their known and unknown co-conspirators, also underpaid the H-2A workers, paying them less than the promised amounts and prevailing wages, and not paying them premium pay rates for overtime despite forcing them to work overtime. Defendants did not provide sick leave, medical care, or workers compensation coverage for workers who were injured or became ill on the job. Defendants did not provide safety equipment or tools to perform the work, and instead forced the H-2A workers to purchase their own gloves, tools, and other safety equipment, and exposed H-2A workers to unsafe working conditions, including excessive heat and exposure to toxic chemicals without providing any training or safety equipment.

31. Defendants, and their known and unknown co-conspirators, also

INDICTMENT – 15

threatened and coerced H-2A workers to misrepresent material facts to federal and state officials, including, but not limited to, where they would be working and living, how much they were being paid, and whether they were being charged for housing and food. When, in 2023, Defendants were required by the United States and State of Washington to repay H-2A workers due to Defendant HARVEST PLUS's lack of a valid H-2A contract on which the H-2A workers could work, Defendants forced H-2A workers to cash the repayment checks and provide the amounts back to Defendants.

32.    After Defendant HARVEST PLUS's applications and petitions had been approved based on the false and fraudulent statements made and submitted by Defendants, Defendants ███████████████████████████████████████ ████████████████████████████████ traveled to Mexico to recruit prospective H-2A workers. Defendants made false statements to farmworkers concerning where they would be working, during what time periods, and how much they would be paid. Defendants did not tell farmworkers that they would be charged fees for housing, food, and transportation.

33.    As one example, in 2022, HARVEST PLUS sought and received approval for H-2A workers for:

| Name of Farm | Location | Number of Workers Approved | Time Period | Approved Worker Housing |
|---|---|---|---|---|
| V-75 | Goldendale, WA | 50 | 4/2022-10/2022 | Rodeway Inn, Pasco, WA |
| Conrad Orchards | Pasco, WA | 50 | 5/2022-10/2022 | Motel 6, Hermiston OR |
| Marquez Farms | Wapato, WA | 50 | 6/2022-10/2022 | Rodeway Inn, Yakima, WA |
| Flat Top Ranch | Prescott, WA | 50 | 6/2022-11/2022 | Motel 6, Hermiston, OR |

INDICTMENT – 16

| Arthur J Den Hoed | Sunnyside, WA | 125 | 7/2022-8/2022 | Rodeway Inn, Yakima, WA |
|---|---|---|---|---|

Workers, however, did not work at all of these locations during these dates, and did not stay at the approved housing locations. For example, Arthur J Den Hoed did not receive any H-2A workers from Defendant HARVEST PLUS in 2022, never agreed to receive any H-2A workers in July or August of 2022, did not know that their name was being listed or used on a U.S. Department of Labor H2A Agricultural Order Form ETA-790A with a begin date of July 5, 2022 and an end date of August 15, 2022, did not give their permission for Defendant HARVEST PLUS to do so, and did not have a need for any H-2A workers in July or August of 2022. Rather, once Defendants had successfully obtained approvals and work visas, Defendants assigned the H-2A workers to various agricultural and non-agricultural employers, and paid them less than the agreed-upon and approved amounts ($17.41/hour in the case of the Arthur J Den Hoed contract), improperly charged them food and housing fees, and otherwise did not comply with the terms of the work authorizations or the requirements of the H-2A program.

<u>Overt Acts in Furtherance of the Conspiracy</u>

34.    In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed in the Eastern District of Washington and elsewhere:

(a)    For 2022, on or about the dates set forth below, Defendants HARVEST PLUS, ███████████████████████████████████████ ███████████████████████████████ as well as other known and unknown co-conspirators, signed, submitted, and caused to be submitted multiple Forms ETA-9142A and Forms ETA-790A to the DOL and Forms I-129 to DHS containing materially false and fraudulent information as set forth herein intending them to be relied upon by those respective agencies, and upon which DOL and

INDICTMENT – 17

DHS did rely:

| Date | U.S. Agency | Form | Farm |
|------|-------------|------|------|
| 4/29/2022 | DOL | Form ETA-790A | Arthur J. Den Hoed, Sunnyside, WA |
| 5/11/2022 | DOL | Form ETA-9142A | Arthur J. Den Hoed, Sunnyside, WA |
| 6/3/2022 | DHS | Form I-129 | Arthur J. Den Hoed, Sunnyside, WA |
| 3/4/2022 | DOL | Form ETA-790A | V-75 Vineyard, Goldendale, WA |
| 3/4/2022 | DOL | Form ETA-9142A | V-75 Vineyard, Goldendale, WA |
| 3/31/2022 | DHS | Form I-129 | V-75 Vineyard, Goldendale, WA |

As discussed above and below, these forms were materially false and fraudulent in that they: (1) misrepresented the need for H-2A workers and that Defendant HARVEST PLUS would be providing H-2A workers to the farm set forth in the application; (2) misrepresented the time period during which the H-2A workers would be working; (3) falsely and fraudulently represented that Defendant HARVEST PLUS would not charge improper housing or food fees to the workers; (4) falsely set forth the location(s) at which H-2A workers would be housed, and that housing would meet applicable federal and state standards; (5) falsely set forth the rate of pay at which H-2A workers would be paid and that Defendant HARVEST PLUS would comply with wage and hour requirements including prevailing wage and overtime requirements; (6) falsely and fraudulently represented that Defendant HARVEST PLUS would comply with work safety requirements including providing safety equipment and coverage for injury or illness; and/or (7) falsely and fraudulently represented compliance with material H-2A program requirements as set forth herein.

(b)     On or about April 29, 2022, Defendants

caused Defendant HARVEST PLUS to submit a Form ETA-790A Form to the Department of Labor requesting approval for 125 H-2A workers for Arthur J. Den Hoed, a Sunnyside, Washington farm, for July and August 2022. As Defendants knew, Arthur J. Den Hoed had no need for 125 H-2A workers, and had no need for any H-2A workers at all in July and August 2022. Defendants never entered into a contract with Arthur J. Den Hoed, or furnished any H-2A workers to Arthur J. Den Hoed. Defendants forged Arthur J. Den Hoed's signature on a work agreement attached to the application dated June 1, 2022.

(c)     Defendants coached and directed H-2A workers to report to federal and state authorities that they would be working at Arthur J. Den Hoed, in order to obtain H-2A visas and entry into the United States. However, once the application and ensuing H-2A visas were approved, Defendants furnished the H-2A workers to other agricultural and non-agricultural concerns that did not have approval for H-2A workers.

(d)     Many H-2A workers who were part of the Arthur J. Den Hoed contract were instead assigned to work at a vineyard business in the Eastern District of Washington named Aquilini Vinyards. These workers were not paid at the approved prevailing wage amount set forth in the H-2A agreement documents and were forced to work overtime without being paid for overtime. The workers were further forced to work in unsafe working conditions, including extreme heat, at times without clean drinking water. The workers were also exposed to chemical pesticide agents on the grapes and were not provided gloves or other safety equipment. Workers were not provided access to appropriate medical care when they became injured or ill on the job and were not paid for days that they missed due to work-related illness or injury. Instead of being housed at the approved housing location or other appropriate housing, workers were housed in an

INDICTMENT – 19

unapproved location in Hermiston, Oregon, with many workers per room and without access to kitchen facilities to prepare food.

(e)     H-2A workers were also forced to pay approximately $100/week for housing and $100/week for food.  These housing and food fees were directed by Defendant ████████████████████████ and collected each week in cash by a co-conspirator known to the Grand Jury who was a relative of Defendant ████████████████████████.  Defendant ████████████████████████ ██████ told H-2A workers that if they did not pay the housing and food fees, he would collect the amounts from the workers and/or from their families in Mexico.

(e)     After August 2022 when the Arthur J. Den Hoed and other approved contracts had expired, Defendants continued to employ the H-2A workers, and to assign them to other non-approved businesses.  Rather than facilitating their travel back to their countries of nationality at the conclusion of the H-2A contract period, Defendant ████████████████████████directed them to remain in the United States illegally, to use assumed names and obtain false identification documents, and continued to employ and pay the workers as "domestic", *i.e.,* non-H-2A workers under false names and social security numbers.  Defendant ████████████████████████ told these workers that if they did not agree to do so and continue working for Defendant HARVEST PLUS after their contracts had ended, he would not allow them to work as H-2A workers for him in the future.  Defendants ████████████████████ and HARVEST PLUS provided paychecks to these workers under the false and assumed names as purported "domestic" workers, knowing that they were the very same workers who had previously been employed by Defendant HARVEST PLUS as H-2A workers.

(f)     Defendants coached H-2A workers to provide false and fraudulent information to federal and state regulators, including, for example, Washington State Employment Security Department personnel as well as federal consular

INDICTMENT – 20

employees responsible for processing the H-2A visa applications.  Defendants directed H-2A workers to provide false and fraudulent information, including: (1) how much they would and were being paid; (2) where they would be working; and (3) what time period they would be working.  Defendants also instructed H-2A workers not to discuss with federal and state regulators the housing and food fees, not to ask questions, and not to volunteer information.

(g)    In 2022, 2023, and 2024, Defendants HARVEST PLUS, ████████████████████████████████████████████████ ██████████████████, and others known and unknown to the Grand Jury improperly forced H-2A workers to pay for their own H-2A visas and required them to pay for their own inbound and outbound transportation.

(h)    For 2023, on or about the dates set forth below, Defendants HARVEST PLUS, █████████████████████████████████████ ███████████████████, as well as other known and unknown co-conspirators, signed, submitted, and caused to be submitted multiple Forms ETA-9142A and Forms ETA-790A to the DOL and Forms I-129 to DHS containing materially false and fraudulent information as set forth herein intending them to be relied upon by those respective agencies, and upon which DOL and DHS did rely:

| Date | U.S. Agency | Form | Farm |
|------|-------------|------|------|
| 12/29/2022 | DOL | Form ETA-790A | Yeager Family Farms Yakima, WA |
| 12/19/2022 | DOL | Form ETA-9142A | Yeager Family Farms Yakima, WA |
| 1/20/2023 | DHS | Form I-129 | Yeager Family Farms Yakima, WA |
| 12/30/2022 | DOL | Form ETA-790A | First Light Vineyards Vineyards/Bella Fortuna Family Farm Walla Walla, WA |
| 12/19/2022 | DOL | Form ETA-9142A | First Light Vineyards/Bella Fortuna Family Farm |

| | | | Walla Walla, WA |
|---|---|---|---|
| 1/20/2023 | DHS | Form I-129 | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA |

As discussed above and below, these forms were materially false and fraudulent in that they: (1) misrepresented the need for H-2A workers and that Defendant HARVEST PLUS would be providing H-2A workers to the farm set forth in the application; (2) misrepresented the time period during which the H-2A workers would be working; (3) falsely and fraudulently represented that Defendant HARVEST PLUS would not charge improper housing or food fees to the workers; (4) falsely set forth the location(s) at which H-2A workers would be housed, and that housing would meet applicable federal and state standards; (5) falsely set forth the rate of pay at which H-2A workers would be paid and that Defendant HARVEST PLUS would comply with wage and hour requirements including prevailing wage and overtime requirements; (6) falsely and fraudulently represented that Defendant HARVEST PLUS would comply with work safety requirements including providing safety equipment and coverage for injury or illness; and/or (7) falsely and fraudulently represented compliance with material H-2A program requirements as set forth herein.

(i)    As one example, in December 2022 and January 2023, Defendant HARVEST PLUS submitted a request for 35 H-2A workers for Yeager Family Farms located in Yakima, Washington to work between February and April of 2023. The Form ETA-790A, Form ETA-9142A, and Form I-129 were materially false and fraudulent.  Yeager Family Farms in fact only requested, and signed a work agreement for, 15 H-2A workers.  Defendants forged the signature of Yeager Family Farm's owner on a work agreement with a falsely inflated 35 H-2A requested employees in order to inflate the number of H-2A workers for which they could obtain approval.  Defendants then assigned the workers to unapproved

labor for which Defendant HARVEST PLUS billed customers.

(j)     Similarly, H-2A workers approved to work at First Light Vineyards/Bella Fortuna Family Farm for the 2023 season did not actually work in that location.  Instead, H-2A workers were assigned to work at businesses in Oregon as well as non-agricultural businesses in which they were furnished not as H-2A workers but instead as "domestic" workers.

(k)     In April 2023, following an investigation by the Washington State Department of Labor and Industries, Defendant HARVEST PLUS was prohibited from H-2A contracting in the State of Washington.  However, for 2024, Defendants HARVEST PLUS and ███████████████████ continued to employ H-2A workers in Washington, as well as in the State of Oregon, with Defendant ████████████ serving as Defendant HARVEST PLUS's H-2A program director responsible for creating, signing, and submitting the required petitions, documents, and applications as well as interacting with prospective customers concerning their need for and use of H-2A workers. Defendants HARVEST PLUS and ████████████████████ further continued to improperly force H-2A workers to pay for their own visas as well as transportation and continued to fraudulently and improperly extract additional housing payments from workers, as well as to underpay workers and to pay them under false and assumed identities provided by employees of Defendant HARVEST PLUS.  Some of these employees were furnished to Washington State businesses as "local hires" or "domestic workers"; *i.e.*, non H-2A workers under a new company name, "Harvest Plus Contracting", which was created and registered as a new company by Defendant ████████████ in Defendant ███████ ████████ daughter's name.

All in violation of 18 U.S.C. § 371.

## COUNT 2
### Conspiracy to Commit Fraud in Foreign Labor Contracting

35.     The Grand Jury re-alleges and incorporates paragraphs 1 through 34 of this Indictment as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

36.     Beginning no later than on or about March 4, 2022, and continuing until at least on or about October 31, 2024, in the Eastern District of Washington and elsewhere, the Defendants ███████████████████████ ████████████████████████████████ and HARVEST PLUS LLC, together with each other and other co-conspirators known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to commit fraud in foreign labor contracting; that is, to recruit, solicit, and hire persons from outside of the United States for purposes of employment in the United States by means of materially false and fraudulent pretenses, representations, and promises regarding that employment, in violation of Title 18, U.S.C., Section 1351.

### OBJECT OF THE CONSPIRACY

37.     The object and purpose of the conspiracy was to obtain money in the form of illegal fees and withholdings from H-2A visa workers and an inexpensive source of labor for customers, while filing and causing to be filed false immigration documents with DOL and DHS.

### MANNER AND MEANS OF THE CONSPIRACY

38.     The Grand Jury re-alleges and incorporates paragraphs 1 through 37 of the Indictment as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

INDICTMENT – 24

All in violation of Title 18, U.S.C., Section 1349.

COUNTS 3-14
False Statements

39.     The Grand Jury re-alleges and incorporates paragraphs 1 through 38 of the Indictment as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

40.     On or about the dates set forth below, in the Eastern District of Washington and elsewhere, the Defendants, ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and HARVEST PLUS LLC, did willfully and knowingly make and cause to be made, and use and caused to be used, in a matter within the jurisdiction of a department or agency of the United States, a false writing or document, knowing the same to contain a materially false, fictitious, and fraudulent statement.  In each count relating to an ETA Form 9142A, Defendants submitted to DOL and subscribed as true that they had not sought or received payment of any kind from the employee for any activity related to obtaining the labor certification, that they would comply with applicable state employment-related laws, and that they would pay the worker the prevailing wage set by DOL, which statements in each instance, Defendants knew were false, in that they agreed to and did require H-2A workers to pay for their own visa fees and transportation, did not employ H-2A workers at the approved agricultural businesses, collected improper housing and food fees, failed to comply with overtime and other pay requirements under Washington State Law, and, including as a result of the improper payments discussed above, failed to pay the H-2A workers the prevailing wage set by DOL, all in violation of 18 U.S.C. 1001(a)(2). In each count relating to a Form I-129, Defendants submitted to DHS and subscribed as true that none of the H-2A workers located for hiring paid or agreed

INDICTMENT – 25

to pay the employer any form of compensation as a condition of employment and agreed to conditions of H-2A employment, which statements in each instance Defendants then and there knew to be false, in that Defendants failed to pay for H-2A worker visa fees and for the H-2A workers' transportation, did not employ H-2A workers at the approved agricultural businesses, improperly extracted and collected housing and food fees from H-2A workers, and failed to conform to other material H-2A program requirements, all in violation of 18 U.S.C. §§ 1001(a)(2), 2.  In each count relating to a Form 790A, Defendants submitted to DOL, and subscribed as true, specific work hours and corresponding locations where Defendants would employ H-2A workers, which statements in each instance Defendants then and there knew to be false in that Defendants knew Defendant HARVEST PLUS would not be sending H2A workers to the listed location to work the listed hours, all in violation of 18 U.S.C. §§ 1001(a)(2), 2.:

| Count | Date | U.S. Agency | Form | Farm |
|---|---|---|---|---|
| 3 | 4/29/2022 | DOL | Form ETA-790A | Arthur J. Den Hoed, Sunnyside, WA |
| 4 | 5/11/2022 | DOL | Form ETA-9142A | Arthur J. Den Hoed, Sunnyside, WA |
| 5 | 6/3/2022 | DHS | Form I-129 | Arthur J. Den Hoed, Sunnyside, WA |
| 6 | 3/4/2022 | DOL | Form ETA-790A | V-75 Vineyard, Goldendale, WA |
| 7 | 3/4/2022 | DOL | From ETA-9142A | V-75 Vineyard, Goldendale, WA |
| 8 | 3/31/2022 | DHS | Form I-129 | V-75 Vineyard, Goldendale, WA |
| 9 | 12/29/2022 | DOL | Form ETA- | Yeager Family Farms Yakima, WA |

INDICTMENT – 26

| | | | 790A | |
|---|---|---|---|---|
| 10 | 12/19/2022 | DOL | Form ETA-9142A | Yeager Family Farms Yakima, WA |
| 11 | 1/20/2023 | DHS | Form I-129 | Yeager Family Farms Yakima, WA |
| 12 | 12/30/2022 | DOL | Form ETA-790A | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA |
| 13 | 12/19/2022 | DOL | Form ETA-9142A | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA |
| 14 | 1/20/2023 | DHS | Form I-129 | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA |

## COUNTS 15-36
## False Swearing in Immigration Matters

41. The Grand Jury re-alleges and incorporates paragraphs 1 through 40 of the Indictment as if fully set forth herein. Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

42. On or about each of the dates set forth below, in the Eastern District of Washington and elsewhere, the Defendants, ███████████████████ ███████████████████████, and HARVEST PLUS, LLC did knowingly subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false statement with respect to a material fact in an application and document required by the immigration laws and regulations prescribed thereunder, to wit, a DOL ETA Form 9142 and a DHS Form I-129, each such instance individually listed below. In each count relating to an ETA Form 9142, Defendants submitted to DOL and subscribed as true that they had not sought or received payment of any kind from the employee for any activity related to obtaining the labor certification, that they would comply with applicable state employment-related laws, and that

INDICTMENT – 27

they would pay the worker the prevailing wage set by DOL, which statements in each instance, Defendants knew were false, in that they agreed to and did require H-2A workers to pay for their own visa fees and transportation, did not employ H-2A workers at the approved agricultural businesses, collected improper housing and food fees, failed to comply with overtime and other pay requirements under Washington State Law, and, including as a result of the improper payments discussed above, failed to pay the workers the prevailing wage set by DOL, all in violation of 18 U.S.C. §§ 1546(a), 2.  In each count relating to a Form I-129, Defendants submitted to DHS and subscribed as true that none of the H-2A workers located for hiring paid or agreed to pay the employer any form of compensation as a condition of employment and agreed to conditions of H-2A employment, which statements in each instance Defendants then and there knew to be false, in that in that Defendants failed to pay for worker visa fees and for their transportation, did not employ H-2A workers at the approved agricultural businesses, improperly extracted and collected housing and food fees from H-2A workers, and failed to conform to other material H-2A program requirements, all in violation of 18 U.S.C §§ 1546(a), 2:

| Count | Date | U.S. Agency | Form | Farm | Foreign H-2A Work Visa |
|---|---|---|---|---|---|
| 15 | 5/11/2022 | DOL | Form ETA-9142A | Arthur J. Den Hoed, Sunnyside, WA | V.M.A.M. |
| 16 | 6/3/2022 | DHS | Form I-129 | Arthur J. Den Hoed, Sunnyside, WA | V.M.A.M. |
| 17 | 5/11/2022 | DOL | Form ETA-9142A | Arthur J. Den Hoed, Sunnyside, WA | J.A.G.R. |
| 18 | 6/3/2022 | DHS | Form I-129 | Arthur J. Den Hoed, Sunnyside, WA | J.A.G.R. |
| 19 | 3/4/2022 | DOL | Form ETA- | V-75 Vineyard, Goldendale, WA | E.A.U.C. |

| | | | 9142A | | |
|---|---|---|---|---|---|
| 20 | 3/31/2022 | DHS | Form I-129 | V-75 Vineyard, Goldendale, WA | E.A.U.C. |
| 21 | 3/4/2022 | DOL | Form ETA-9142A | V-75 Vineyard, Goldendale, WA | B.D.R.J. |
| 22 | 3/31/2022 | DHS | Form I-129 | V-75 Vineyard, Goldendale, WA | B.D.R.J. |
| 23 | 3/4/2022 | DOL | Form ETA-9142A | V-75 Vineyard, Goldendale, WA | A.E.B.D. |
| 24 | 3/31/2022 | DHS | Form I-129 | V-75 Vineyard, Goldendale, WA | A.E.B.D. |
| 25 | 3/4/2022 | DOL | Form ETA-9142A | V-75 Vineyard, Goldendale, WA | N.M.G.C. |
| 26 | 3/31/2022 | DHS | Form I-129 | V-75 Vineyard, Goldendale, WA | N.M.G.C. |
| 27 | 12/19/2022 | DOL | Form ETA-9142A | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA | E.E.G.M. |
| 28 | 1/20/2023 | DHS | Form I-129 | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA | E.E.G.M. |
| 29 | 12/19/2022 | DOL | Form ETA-9142A | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA | J.A.G.R. |
| 30 | 1/20/2023 | DHS | Form I-129 | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA | J.A.G.R. |
| 31 | 12/19/2022 | DOL | Form ETA-9142A | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA | N.M.G.C. |
| 32 | 1/20/2023 | DHS | Form I- | First Light | N.M.G.C. |

INDICTMENT – 29

| | | | 129 | Vineyards/Bella Fortuna Family Farm Walla Walla, WA | |
|---|---|---|---|---|---|
| 33 | 12/19/2022 | DOL | Form ETA-9142A | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA | C.R.M.M. |
| 34 | 1/20/2023 | DHS | Form I-129 | First Light Vineyards/Bella Fortuna Family Farm Walla Walla, WA | C.R.M.M. |
| 35 | 12/19/2022 | DOL | Form ETA-9142A | Yeager Family Farms Yakima, WA | A.E.B.D. |
| 36 | 1/20/2023 | DHS | Form I-129 | Yeager Family Farms Yakima, WA | A.E.B.D. |

COUNT 37
Fraud in Foreign Labor Contracting

43.     The Grand Jury re-alleges and incorporates paragraphs 1 through 42 of the Indictment as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

44.     Between April 22, 2022, and November 10, 2022, in the Eastern District of Washington and elsewhere, Defendants ████████████████████ ████████████████████████, and HARVEST PLUS, LLC knowingly and with the intent to defraud recruited, solicited, and hired one or more persons outside the United States for purposes of employment in the United States by means of materially false and fraudulent pretenses, representations, and promises regarding those employees.

All in violation of 18 U.S.C. §§ 1351, 2.

INDICTMENT – 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT 38
Fraud in Foreign Labor Contracting

45.    The Grand Jury re-alleges and incorporates paragraphs 1 through 44 of the Indictment as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

46.    Between January 25, 2023, and October 31, 2023, in the Eastern District of Washington and elsewhere, Defendants ████████████████████████ ████████████████████████████████████████████████, and HARVEST PLUS, LLC knowingly and with the intent to defraud recruited, solicited, and hired one or more persons outside the United States for purposes of employment in the United States by means of materially false and fraudulent pretenses, representations, and promises regarding those employees. All in violation of 18 U.S.C. §§ 1351, 2.

COUNT 39
Fraud in Foreign Labor Contracting

47.    The Grand Jury re-alleges and incorporates paragraphs 1 through 46 of the Indictment as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

48.    Between May 20, 2024, and October 31, 2024, in the Eastern District of Washington and elsewhere, Defendants ████████████████████████████ ████████████████, and HARVEST PLUS, LLC, knowingly and with the intent to defraud recruited, solicited, and hired one or more persons outside the United States for purposes of employment in the United States by means of materially false and fraudulent pretenses, representations, and promises regarding those employees.

INDICTMENT – 31

All in violation of 18 U.S.C. §§ 1351, 2.

COUNTS 40-43
Aggravated Identity Theft

49.     The Grand Jury re-alleges and incorporates paragraphs 1 through 48 of the Indictment as if fully set forth herein.  Further, the allegations in all other counts in the Indictment are re-alleged and incorporated in this count as if fully set forth.

50.     On or about the dates below, in the Eastern District of Washington and elsewhere, Defendants ███████████████████████████████, and HARVEST PLUS did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, as further discussed below for each count, during and in relation to felony violations as described below:

| Count | Date | Detail |
|-------|------|--------|
| 40 | 6/2/2022 | False, fraudulent, and forged signature of A.J.D.H. in work order for H-2A program workers submitted as part of 2022 H-2A petition, during and in relation to violations of 18 U.S.C. §§ 1346(a) and 1351, as described above in Counts 15 and 37 |
| 41 | 12/29/2022 | False, fraudulent, and forged signature of J.Y. in work order for H-2A program workers submitted as part of 2023 H-2A petition, during and in relation to violations of 18 U.S.C. §§ 1546(a) and 1351, as described above in Counts 35 and 38. |
| 42 | 12/30/2022 | False, fraudulent, and forged signature of F.J. in work order for H-2A program workers submitted as part of 2023 H-2A petition, during and in relation to violations of 18 U.S.C. §§ 1546(a) and 1351, as described above in Counts 27, 29, 31, 33, and 38. |
| 43 | 12/30/2022 | False, fraudulent, and forged signature of J.M. in work order for H-2A program workers submitted |

INDICTMENT – 32

| | | as part of 2023 H-2A petition, during and in relation to violations of 18 U.S.C. §§ 1546(a) and 1351, as described above in Counts 27, 29, 31, 33, and 38. |
|---|---|---|

All in violation of 18 U.S.C. §§ 1028A(a)(1), 2.

NOTICE OF CRIMINAL FORFEITURE ALLEGATIONS

The allegations contained this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures.

<u>Conspiracy to Commit Fraud in Foreign Labor Contracting</u>

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction the offense in violation of 18 U.S.C. §§ 1351, 1349, and/or in violation of 18 U.S.C. § 1351, as set forth in Count 2 and/or Counts 37 – 39, of this Indictment, the Defendants, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and HARVEST PLUS LLC, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

<u>MONEY JUDGMENT</u>

A sum of money in United States currency, representing the amount of proceeds obtained by the Defendants as a result of the fraud violations.

<u>False Swearing in Immigration Matters</u>

Pursuant to 18 USC § 982(a)(6), upon conviction of the offense(s) in violation of 18 U.S.C. § 1546 as set forth in Counts 15 – 36 of this Indictment, the Defendants, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and HARVEST PLUS, LLC, shall forfeit to the United States of America, any conveyance, including any vessel, vehicle, or aircraft used in the

INDICTMENT – 33

commission of the offense(s); and, any property, real or personal that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense(s), or any property real or personal used or intended to be used to facilitate the commission of the offense(s). The property to be forfeited includes, but is not limited to, the following:

MONEY JUDGMENT

A sum of money in United States currency, representing the amount of proceeds obtained by the Defendants as a result of such violations

Aggravated Identity Theft

Pursuant to 18 U.S.C. § 982(a)(2)(B) and/or 18 U.S.C. § 1028(b), upon conviction of an offense(s) in violation of 18 U.S.C. § 1028A(a)(1), as set forth in Counts 40 – 43 of this Indictment, the Defendants, ███████████████████████, and HARVEST PLUS, LLC, shall forfeit to the United States of America, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s); and/or any personal property used or intended to be used to commit the offense(s).  The property to be forfeited includes, but is not limited to, the following:

MONEY JUDGMENT

A sum of money in United States currency representing the amount of proceeds obtained by the Defendants as a result of the aggravated identity theft offense(s).

If any of the property described above, as a result of any act or omission of the Defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

INDICTMENT – 34

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C) and/or 18 U.S.C. §§ 982(b)(1) and 1028(g) and 28 U.S.C. § 2461(c).

DATED this ___ day of October 2025.

A TRUE BILL

_____
Foreperson

_____
S. Peter Serrano
United States Attorney

_____
Courtney R. Pratten
Assistant United States Attorney

_____
Jeremy J. Kelley
Assistant United States Attorney

INDICTMENT – 35